UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ -Civ or Cr-

06 - 60054 CIV - COOKE   MAGISTRATE JUDGE
BROWN

FEDERAL MARITIME COMMISSION |

Plaintiff |

|

vs. |

|

ALL-IN-ONE SHIPPING, INC., AROUND |
THE WORLD SHIPPING, INC., BOSTON |
LOGISTICS CORP., GLOBAL DIRECT |
SHIPPING, DANIEL CUADRADO, |
ELIZABETH F. HUDSON,  AND |
JOSHUA MORALES |

|

Defendants. |

FILED by _____ D.C.
MGC

**JAN 17 2006**

CLARENCE MADDOX
CLERK U. S. DIST. CT.
S.D. OF FLA. - MIAMI

## ORDER GRANTING PRELIMINARY INJUNCTION

On this _17th_ day of January 2006, at 4:00 .m., upon consideration of

plaintiff Federal Maritime Commission's Motion for Preliminary Injunction, the

Complaint filed by plaintiff Federal Maritime Commission ("FMC or Commission"), and

the attached affidavits and exhibits, the Court finds that:

1.  Defendants All-in-One Shipping, Inc.; Around the World Shipping, Inc.;

Boston Logistics Corp.; Global Direct Shipping; Daniel Cuadrado; Elizabeth F. Hudson;

and Joshua Morales are providing ocean transportation services in the foreign commerce

of the United States.

2. Defendants are holding themselves out as common carriers to the public to

provide ocean transportation services in the foreign commerce of the United States by

advertising such services and soliciting business on internet websites.   Plaintiff's Margolis Aff. at ¶¶3-6, Exhibits 2, 6, 9, 11.

3.   Defendants accepted cargo from proprietary shippers and arranged full door-to-door ocean transportation on international shipments from the United States to foreign destinations.  Plaintiff's Margolis Aff. at ¶¶3-6, Exhibits 3, 7, 10, 12.

4.   Defendants are paid directly by the proprietary shippers in exchange for arranging full door-to-door ocean transportation of cargo from the United States to foreign destinations, and the ocean common carriers or non-vessel-operating common carriers with whom Defendants contracted to carry the cargo would in turn look to the Defendant companies and individuals for payment of its invoiced freight amount. Plaintiff's Sublette Aff. at ¶¶1-3, 5; Plaintiff's Murphy Aff. at ¶¶10, 13-16; Plaintiff's Margolis Aff. at ¶¶3-6, Exhibits 3, 7, 10, 12-13.

5.   Various bills of lading show Defendants All-in-One Shipping, Inc., Boston Logistics Corp., Around the World Shipping, Inc., and Global Direct Shipping as the shippers, i.e., their names and addresses are listed in the "shipper" box, and show the proprietary shippers as the "consignees."  Plaintiff's Margolis Aff. at ¶¶3-6, Exhibits 3, 7, 10, 12.

6.   Defendants are not licensed by the FMC as ocean transportation intermediaries, do not have evidence of financial responsibility in the form of a bond, proof of insurance, or other surety on file with the FMC, and do not have published tariffs showing their rates and charges available to the public.

7. Defendants have received oral and written warnings from the FMC indicating that their operations without a license, proof of financial responsibility and tariff are

2

unlawful under the Shipping Act.  Plaintiff's Murphy Aff. at ¶¶ 13-15,  17; Plaintiff's Margolis Aff. at ¶¶ 3, 7, Exhibits 4, 19.

## Conclusions of Law

8.   The FMC is an independent administrative agency of the United States, responsible for the regulation of oceanborne transportation in the foreign commerce of the United States pursuant to, inter alia, the Shipping Act of 1984.  46 U.S.C. app. § 1701 et seq.   Pursuant to the Shipping Act, the FMC regulates ocean transportation intermediaries ("OTIs"), which include non-vessel-operating common carriers ("NVOCCs").  46 U.S.C. app. § 1702(17)(B).   An NVOCC is a common carrier who does not operate the vessels by which the ocean transportation is provided, and is a shipper in relation to common carriers, i.e., vessel-operating common carriers or other NVOCCs.  46 U.S.C. app. § 1702(17)(B); 46 C.F.R. § 520.11(c).  In its role as a common carrier, an NVOCC is "a person holding itself out to the general public to provide transportation by water of passengers or cargo between the United States and a foreign country for compensation," and "assumes responsibility for the transportation from the port or point of receipt to the port or point of destination."  46 U.S.C. app. § 1702(6).

9.  Under the Shipping Act, an NVOCC in the United States is required (1) to hold a valid license issued by the Commission, 46 U.S.C. app. § 1718(a); 46 C.F.R. § 515.3 (1999);  (2) to demonstrate financial responsibility by furnishing a bond, proof of insurance or other surety in the amount of $75,000, that is filed with the Commission, 46 U.S.C. app. § 1718(b); 46 C.F.R. § 515.21-515.27 (1999); and (3) to keep open for public inspection their valid tariff rates, 46 U.S.C. app. § 1707(a)(1); 46 C.F.R. § 520.3 (1999).

10. The Shipping Act, at section 8, 46 U.S.C. app. § 1707, makes it unlawful for an NVOCC to operate without having a tariff available for public inspection.

11. The Shipping Act, at section 19(a), 46 U.S.C. app. § 1718(a), makes it unlawful for an OTI in the United States to operate without having a license issued by the FMC.

12. The Shipping Act, at section 19(b), 46 U.S.C. app. § 1718(b), makes it unlawful for an OTI to operate without having a bond, proof of insurance or other surety filed with the FMC.

13. Under sections 11-14 of the Shipping Act, 46 U.S.C. app. §§ 1710 - 1713, the Commission has broad powers to investigate apparent violations of the Shipping Act, to conduct appropriate proceedings, to issue cease and desist orders, and to assess civil penalties.

14. Pursuant to section 11(h)(1) of the Shipping Act, 46 U.S.C. app. § 1710(h), the Commission is authorized to bring suit to seek a preliminary injunction of any conduct in violation of the Shipping Act, in connection with any investigation conducted by the FMC.  Section 11(h)(1) provides that "[i]n connection with any investigation conducted under this section, the Commission may bring suit in a district court of the United States to enjoin conduct in violation of [the Shipping Act]."

15. Section 11(h)(1) indicates that "[u]pon a showing that standards for granting injunctive relief by courts of equity are met and after notice to the defendant," the Court may grant a preliminary injunction.

16. The standard for granting injunctive relief is a four-part test.  The plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that

4

irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. BellSouth Telecommunications, Inc. v. MCI Metro Access Transmission Servs., LLC, 425 F.3d 964, 968 (11th Cir. 2005).

17.    The FMC has shown that it is likely to succeed on the merits, by demonstrating that Defendants are likely to be found in violation of the Shipping Act in FMC Docket No..

18.    The FMC has shown that irreparable injury will be suffered unless the injunction is granted, by demonstrating that Defendants are actively soliciting and accepting cargo for transportation in the foreign commerce of the United States without a license, proof of financial responsibility or a tariff.   The FMC in particular has demonstrated that because Defendants are operating without a bond, proof of insurance or other surety, unsuspecting shippers may be irreparably injured in the event Defendants mishandle or fail to deliver their cargo.   So long as Defendants continue operating without a bond, proof of insurance or other surety shippers may be severely impeded in obtaining compensation for actual injuries.

19. The FMC has shown that the threat of irreparable injury to the FMC and the public outweighs any potential harm to Defendants, by demonstrating that Defendants will suffer no legally cognizable harm by being ordered not to violate the law. To the extent Defendants intend to operate lawfully, they will not be injured by the entry of injunctive relief.

20. Finally, the FMC has shown that the entry of injunctive relief will not be adverse to the public interest, by demonstrating that the public interest is served by preventing Defendants from engaging in unlawful practices. The public interest is further served by effectuating and protecting United States shipping policies. By requiring NVOCCs to file a bond, proof of insurance or other surety, Congress recognized that certain illegal practices by NVOCCs, like failing to deliver cargo, failing to honor loss or damage claims, and abandoning or refusing to release cargo, are made worse by the fact that many NVOCCs lack significant tangible assets. See H.R. Rep. No. 785, 101st Congress, 2d Sess. 1-4 (1990). Requiring bonds, proof of insurance or other sureties, lessens the risk to shippers that they will be left without their cargo, or with damaged cargo, at the hands of an effectively judgment-proof common carrier. Similarly, in requiring OTIs in the United States to have a license, Congress intended that the Commission examine those wishing to operate in our nation's foreign commerce to ensure that only those found by the FMC "to be qualified by experience and character" may act as OTIs. 46 U.S.C. app. § 1718. In operating without a license, Defendants undermine this objective completely. Finally, by failing to have a tariff available for public inspection, Defendants violate section 8 of the Shipping Act and undermine the statutory objective of providing clearly defined rates to the shipping public. See 46 U.S.C. app. § 1707(a) ("each common carrier . . . shall keep open to public inspection . . . tariffs showing all its rates, charges, classifications, rules, and practices.").

## Summary

21. Plaintiff FMC has shown that Defendants are operating in violation of sections 8(a), 19(a), and 19(b) of the Shipping Act of 1984. The FMC has initiated an

administrative investigation of Defendants, FMC Docket No. 06-01. The FMC is permitted to seek injunctive relief in connection with any investigation pursuant to section 11(h) of the Shipping Act. The FMC has met the standards for granting injunctive relief by showing (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction is issued; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) if issued, the injunction would not be adverse to the public interest. For these reasons, the FMC's Complaint for Injunctive Relief is granted, and a preliminary injunction is entered against Defendants.

## Preliminary Injunction

TO DEFENDANTS ALL-IN-ONE SHIPPING, INC., AROUND THE WORLD SHIPPING, INC., BOSTON LOGISTICS CORP., GLOBAL DIRECT SHIPPING, DANIEL CUADRADO, ELIZABETH F. HUDSON, AND JOSHUA MORALES:

> You, your agents, servants, employees, and attorneys, and those in active concert or participation with you or them ARE HEREBY RESTRAINED AND ENJOINED FROM:
>
> violating sections 8, 19(a), and 19(b) of the Shipping Act of 1984, 46 U.S.C. app. §§ 1707, 1718(a) and 1718(b), by accepting cargo for transportation and advertising for or soliciting cargo while operating as an ocean transportation intermediary in the United States without a valid license issued by the Federal Maritime Commission, and by accepting cargo for transportation and advertising for or soliciting cargo while operating as a non-vessel-operating common carrier without a valid bond, proof of insurance or other surety on file with the Federal Maritime Commission and without a tariff available for inspection by the public.

**DONE AND ORDERED** at Miami, Florida, this _17_ day of January, 2006.

_____
UNITED STATES DISTRICT JUDGE

cc:    Jennifer C. Devine
       Office of the General Counsel
       Federal Maritime Commission
       800 North Capitol Street NW
       Washington, D.C.  20573
       Tel: (202) 523-5740
       Fax: (202) 523-5738
       Generalcounsel@fmc.gov

8